IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

SEVENTEENTH STREET ASSOCIATES, LLC,
d/b/a Huntington Health and Rehabilitation Center,

          Plaintiff,

v.                                CIVIL ACTION NO. 3:11-0478

FAITH COLE, next friend and
on behalf of RUTH HAYNIE,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is a Motion to Compel Arbitration and Stay State-Court Proceedings by Plaintiff Seventeenth Street Associates, LLC., d/b/a Huntington Health and Rehabilitation Center (HHRC). [ECF No. 2]. Defendant Faith Cole, in her capacity as next friend and on behalf of her mother, Ruth Haynie, opposes the motion. For the following reasons, the Court **GRANTS** the motion with respect to arbitration and **DENIES** the motion to stay.

**I.
FACTUAL AND
PROCEDURAL HISTORY**

As this Court recently stated in its Memorandum Opinion and Order entered on January 31, 2012,[1] this action is directly related to another action brought before this Court by Canyon Sudar Partners, LLC (CSP) and others against Ms. Cole to compel arbitration in a civil

---

[1] *Seventeenth Street Assocs., LLC v. Cole*, No. 3:11-0478, 2012 WL 275380 (Order entered on Jan. 31, 2012).

action filed by Ms. Cole in the Circuit Court of Cabell County, West Virginia. *See Canyon Sudar Partners, LLC v. Cole*, No. 3:10-1001, 2011 WL 1233320 (S.D. W. Va. Mar. 29, 2011); *Cole v. Canyon Sudar Partners, LLC,* No. 10-C-0167 (Cir. Ct. of Cabell County, W. Va.). In the state action, Ms. Cole alleges, inter alia, that her mother suffered personal injuries while she was a resident at HHRC, a nursing home facility located in Huntington, West Virginia. However, at first, Ms. Cole did not sue Seventeenth Street Associates or HHRC in that state court action. Rather, she initially sued CSP, the primary parent company of Seventeenth Street Associates, and SVCare Holding LLC, Sava Senior Care LLC, SSC Equity Holdings LLC, SMV Management Company LLC, SMV Huntington LLC, and Annica Stansberry, who is the purported administrator of HHRC.[2]

In response to the first state court action, CSP, SVCare Holdings LLC, Sava Senior Care LLC, and SSC Equity Holdings LLC[3] filed an action in this Court seeking to enforce the "Agreement for Dispute Resolution Program" (DRP) that was signed by a representative of HHRC and Ms. Cole. Ms. Cole moved to dismiss the federal action by arguing that: (1) there was no valid arbitration agreement because she did not have authority to bind her mother to the agreement; (2) the agreement was unenforceable because it is contrary to West Virginia law and public policy; (3) the agreement was unenforceable because it was vague with respect to whether the plaintiffs in the federal action were parties to the agreement; and (4) Seventeenth Street Associates and Ms.

---

[2]Ms. Cole also named in the state lawsuit John Does 1 through 10 and Unidentified Entities 1 through 10 (as to HHRC).

[3]SMV Management Company LLC, SMV Huntington LLC, Annica Stansberry, John Does 1 through 10 and Unidentified Entities 1 through 10 were parties to the state action, but they were not parties to the federal action.

Stansberry were indispensable parties under Rule 19 of the Federal Rules of Civil Procedure, and their addition to the federal action would destroy diversity jurisdiction.

In the Memorandum Opinion and Order entered by this Court on March 29, 2011, the Court rejected Ms. Cole's arguments and granted the Motion to Compel Arbitration. In doing so, the Court specifically found, inter alia, that Ms. Cole was able to bind her mother to the agreement and that West Virginia Code § 16-5C-15(c),[4] which prohibits arbitration clauses with nursing home residents, is preempted by the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16. Citing concerns of federalism, comity, and limitations imposed by the Anti-Injunction Act, 28 U.S.C. § 2283, however, this Court declined to stay the state action.

According to Seventeenth Street Associates, after this Court ruled in the first federal action, Ms. Cole did not initiate arbitration proceedings. Instead, she filed a motion in state court

---

[4]In relevant part, this section provides:

> Any nursing home that deprives a resident of any right or benefit created or established for the well-being of this resident by the terms of any contract, by any state statute or rule, or by any applicable federal statute or regulation, shall be liable to the resident for injuries suffered as a result of such deprivation. . . .
>
> Any waiver by a resident or his or her legal representative of the right to commence an action under this section, whether oral or in writing, shall be null and void as contrary to public policy.

W. Va. Code § 16-5C-15(c).

to add Seventeenth Street Associates as a party defendant. In Response, Seventeenth Street Associates filed the present federal action to enforce the arbitration agreement based upon this Court's ruling in the first federal action. Ms. Cole moved to dismiss this second action on the ground that this Court lacked jurisdiction because diversity did not exist. The Court denied her motion on January 31, 2012, and directed that the parties complete their briefing on the Motion to Compel Arbitration and Stay State-Court Proceedings. Briefing is now complete, and the motion is ripe for decision.

## II.
## DISCUSSION

In its Complaint to Compel Arbitration and Stay State-Court Proceedings, Seventeenth Street Associates asserts, inter alia, that Ms. Cole is barred from contesting the validity of the arbitration agreement under the doctrine of res judicata. *Compl. to Compel Arbitration and Stay State-Court Proceedings*, at 6. Seventeenth Street Associates does not directly raise the issue of res judicata in its motion, but it does argue the claim is barred by the doctrine in its Reply brief. Ms. Cole makes no arguments with respect to whether res judicata applies to this situation. Although the parties have raised other issues in their briefs as well, the Court finds that res judicata controls this Court's decision.

"Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979). When, as here, a federal court's jurisdiction is based upon diversity of citizenship, the court must look to state law to determine whether res judicata applies. *Witthohn v. Federal Ins. Co.*, 164 Fed.Appx. 395, 397 n.2 (4th Cir. 2006) (stating

West Virginia law controls whether the plaintiff's claim was barred by res judicata); *Graves v. Associated Transport, Inc.*, 344 F.2d 894, 896 (4th Cir. 1965) (holding that state law governs the parties' rights and obligations when diversity of citizenship is the sole basis of jurisdiction); *cf. Braxton v. Matthews*, 883 F. Supp. 1068 (S.D. W. Va. 1995) (applying West Virginia law with respect to collateral estoppel). In West Virginia, res judicata applies when three criteria are met. These criteria are:

> First, there must have been a final adjudication on the merits in the prior action by a court having jurisdiction of the proceedings. Second, the two actions must involve either the same parties or persons in privity with those same parties. Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action.

Syl. Pt. 4, in part, *Blake v. Charleston Area Medical Center, Inc.*, 498 S.E.2d 41 (W. Va. 1997).

In the first federal action, the Court entered its decision on March 29, 2011, and administratively closed the case pending completion of arbitration. As discussed below, this constitutes a final decision on the merits. Thus, the first criteria under West Virginia law is met.

What constitutes a final decision is well established in American jurisprudence. In *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79 (2000), the Supreme Court stated that a "final decision" is one "that ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." 531 U.S. at 86 (internal quotation marks and citations omitted). In the

case before it, the Supreme Court was asked to determine "whether an order compelling arbitration and dismissing a party's underlying claims is a 'final decision with respect to an arbitration' within the meaning of § 16(a)(3) of the" FAA and, therefore, immediately appealable under the Act.[5] *Id*. at 82. In finding that it was a final order, the Supreme Court found that the district court had disposed of the entire case on the merits by its order and there was nothing left to do but execute the judgment. *Id*. at 86. Although a party to an arbitration agreement may bring a separate action to enter judgment, vacate, or modify an arbitration award under the FAA, 9 U.S.C. §§ 9-11, those remedies do not vitiate an otherwise final order. *Id*.

Petitioners in *Green Tree* argued the arbitration order was not a final order because it occurred in an "embedded" proceeding, which is an action that contains a request for arbitration together with other claims for relief. *Id*. at 87. The Supreme Court recognized that some Courts of Appeal held orders compelling arbitration in embedded proceedings, even if the other claims are dismissed, are not final orders. In contrast, arbitration orders entered in "independent" proceedings, in which a request to enforce arbitration is the only issue before the court, are final orders. *Id*. Finding no indication by Congress that it intended to apply such a complex distinction to § 16(a)(3) when it was enacted in 1988, the Supreme Court rejected the notion and simply applied the well-established meaning of the term "final decision" to the provision. *Id*. at 88-89.

---

[5] Section 16(a)(3) provides that "[a]n appeal may be taken from . . . a final decision with respect to an arbitration that is subject to this title." 9 U.S.C. § 16(a)(3).

In *Penn-America Insurance Co. v. Mapp*, 521 F.3d 290 (4th Cir. 2008), the Fourth Circuit applied this same definition to a declaratory judgment action in an insurance case. In the case, April Mapp filed suit in state court against the owner of a bar that served alcohol to a driver of a motorcycle that struck her. 521 F.3d at 292. The bar owner's insurance company brought a declaratory judgment action in the district court asserting it was not obligated to defend or indemnify the bar owner. *Id.* at 293. Upon cross motions, the district court resolved some of the issues before it, but it withheld ruling on the indemnification issue until after the state court reached a decision on the merits. *Id.* at 293-94. The district court then dismissed the declaratory judgment action from the active docket of the court, with a provision that the parties may move to have it reinstated. *Id.* at 294. The district court also entered a judgment order, "dismissing the case from the active docket." *Id.* at 294 (internal quotation marks omitted). The insurer appealed from this order.

In determining it did not have jurisdiction to entertain the appeal pursuant to 28 U.S.C. § 1291,[6] the Fourth Circuit reiterated its decision in *Doe v. Shalala*, 26 Fed. Appx. 338, 339 (4th Cir. 2002) (unpublished), that an order removing "a case from a court's 'active docket' is the functional equivalent of an administrative closing, which does not end a case on its merits or make further litigation improbable." *Id.* at 295. Thus, such an action "does not independently satisfy the finality mandate of § 1291." *Id.* (citations omitted). In other words, a "non-final order does not become final because the district court administratively closed the case after issuing the order. A reviewing court must consider whether an order is final and appealable without regard to the

---

[6]Section 1291 provides, in part: "The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . ." 28 U.S.C. § 1291.

existence of the administrative closure." *Id*. Based upon these principles, the Fourth Circuit held in *Penn-America* that the order was not a final order because it was clear that the indemnification issue remained pending until the merits of the underlying state court case could be resolved. Thus, the district court's decision to dismiss the declaratory judgment action from the active docket did not convert an otherwise non-final order into a final order. 521 F.3d at 295-96.

In support of its decision in *Penn-America*, the Fourth Circuit also cited the Ninth Circuit's decision in *Dees v. Billy*, 394 F.3d 1290 (9th Cir. 2005). In *Dees*, the plaintiff-appellant filed a medical malpractice case against the defendants-appellees in state court. The defendants-appellees removed the action to the district court and sought to enforce arbitration. 394 F.3d at 1291. The district court "stayed the action, compelled arbitration, and administratively closed the case." *Id.* (footnote omitted). The plaintiff-appellant appealed.

In considering whether it had jurisdiction to hear the appeal under § 16(a)(3) of the FAA, the Ninth Circuit stated that an administrative closure "is a docket management tool that has no jurisdictional effect." *Id*. 1294. Instead, a court must look to the definition of a "final decision," as stated in *Green Tree,* and determine whether a final, appealable order was entered. As the medical malpractice case in the action before it was stayed pending arbitration, rather than dismissed, the Ninth Circuit held the order was not final because the medical malpractice action remained pending before the court. *Id*. at 1293-94.

-8-

In so holding, the Ninth Circuit distinguished the facts before it from those considered by the Fifth Circuit in *American Heritage Life Insurance Co. v. Orr*, 294 F.3d 702 (5th Cir. 2002). *American Heritage* is similar to the present case. In *American Heritage*, the appellants filed suit against the appellees in state court. As in this case, the appellees then brought an independent action in the district court seeking to compel arbitration under the FAA and stay the state court proceedings. The district court entered an order compelling arbitration, staying the related state court proceedings, and closing–but did not dismissing–the federal action. *Id*. at 706. On appeal from that order, the Fifth Circuit looked to § 16(a)(3) and the Supreme Court's pronouncement in *Green Tree* and stated that "[t]here is no practical distinction between 'dismiss' and 'close' for purposes of appeal. The application of each word results in a termination on the merits, leaving the judgment-rendering court with nothing more to do but execute the judgment." *Id.* at 707-08. Thus, the Fifth Circuit held that, where the only issues before the district court was whether it should compel arbitration and stay the state court proceedings and the district court ruled on those issues, "thereby effectively ending the entire matter on the merits and leaving nothing more for the district court to do but execute the judgment, appellate jurisdiction lies, as the decision is 'final' within the contemplation of § 16(a)(3) of the FAA." *Id*. at 708.

The importance of these cases is clear: When deciding whether an order is a "final decision," a court must look to whether the order ends the litigation before it on the merits with nothing left for the court to do other than execute the judgment. If a matter is administratively closed in an arbitration case, an order will still be deemed final if it otherwise meets the definition of a "final decision" under § 16(a)(3). *Green Tree*, 531 U.S. at 86. Even if one of the parties later

seeks to have the court enter a judgment, vacate, or modify an arbitration award, it may be brought in a separate action under the FAA, which does not alter the character of an otherwise final order. *Id.* at 86.

In this case, like *American Heritage*, a declaratory judgment action was brought in the first federal action to compel arbitration under the FAA and stay the state court proceedings. The underlying claims remained in state court. Thus, when this Court entered its order granting arbitration and denying the motion to stay, the Court resolved all the issues before it and there was nothing left for this Court to do other than execute the judgment. The fact the Court administratively closed the case for docket management purposes is of no consequence to the finality of the decision. As neither party appealed, the March 29, 2011 Memorandum Opinion and Order constitutes a final decision on the merits for purposes of the first requirement of res judicata under West Virginia law.

Turning next to the issue of privity, the Court has no difficulty finding Seventeenth Street Associates is in privity with CSP and the other corporate entities named in the first federal action. As stated in this Court's previous Memorandum Opinion and Order denying Ms. Coles' Motion to Dismiss, CSP is the primary parent company of Seventeenth Street Associates and directly related to the other companies through the establishment of a series of limited liability companies.[7] Although Seventeenth Street Associates was not named in the first federal action, it

---

[7]As previously stated, Seventeenth Street Associates asserts its organizational structure is as follows:

    1.    The sole member of HHRC is SSC

(continued...)

agrees that it is in privity with the corporate defendants that were named and, in fact, it is represented by the same lead counsel. Clearly privity exists, and the second requirement of res judicata is met.

Finally, the cause of action in this case is identical to the cause of action in the first case. Therefore, the third requirement of res judicata is met.

---

[7](...continued)
        Huntington Operating Company, LLC.

2. The sole member of SSC Huntington Operating Company, LLC is SSC Submaster Holdings, LLC.

3. The sole member of SSC Submaster Holdings, LLC is SSC Equity Holdings, LLC.

4. The sole member of SSC Equity Holdings, LLC is Sava Senior Care, LLC.

5. The sole member of Sava Senior Care, LLC is SVCare Holdings, LLC.

6. The sole member of SVCare Holdings, LLC is CSP.

7. CSP's two founding members are Leonard Grunstein and Murray Forman, who are citizens of New Jersey and New York, respectively.

*Memorandum Opinion and Order*, at 4 (entered on Jan. 31, 2012) (denying Motion to Dismiss).

Although, as previously stated, Ms. Cole makes no argument with respect to whether res judicata applies, the Court recognizes there is support for an exception to the doctrine under West Virginia case law if there is such a material change of circumstances or law subsequent to the first judgment that res judicata should not be applied. *See Blethen v. W. Va. Dep't of Revenue*, 633 S.E.2d 531 (W. Va. 2006); *Huntington Brick & Tile Co. v. Public Serv. Comm'n*, 149 S.E. 677 (W. Va. 1929). One of the arguments Ms. Cole makes in response to Seventeenth Street Associates' motion is that the agreement is contrary to West Virginia law and against public policy as stated by the West Virginia Supreme Court in *Brown v. Genesis Healthcare Corp.*, Nos. 35494, 35546, 35635, 2011 WL 2611327 (W. Va. June 29, 2011),[8] which was issued after this Court's decision in the first federal action. Arguably *Brown* could constitute a significant change in law but, for the fact that, since the time Ms. Cole filed her brief in this case, the United States Supreme Court vacated the judgment and remanded *Brown*. *Marmet Health Care Center, Inc. v. Brown*, Nos. 11-391, 11-394, 2012 WL 538286 (Feb. 12, 2012) (per curiam). In its decision, the Supreme Court stated that "West Virginia's prohibition against predispute agreements to arbitrate personal-injury or wrongful-death claims against nursing homes is a categorical rule prohibiting arbitration of a particular type of claim, and that rule is contrary to the terms an coverage of the FAA." 2012 WL 538286, at *2 (citations omitted). The Supreme Court then remanded the case for the court to "consider whether, absent that general public policy, the arbitration clauses in . . . [two of the] case[s] are unenforceable

---

[8]For purposes of appeal, *Brown* was consolidated with *Taylor v. MHCC, Inc.* and *Marchio v. Clarksburg Nursing & Rehabilitation Center, Inc.*

-12-

under state common law principles that are not specific to arbitration and pre-empted by the FAA." *Id.*[9]

Ms. Cole also argues for the first time in this case that the arbitration agreement is unenforceable because a substantive and material term of the agreement cannot be enforced. Specifically, that one of the paragraphs in the agreement provides the "DRP must be settled by the rules and procedures of the National Arbitration Form ("NAF") . . . ." *Agreement for Dispute Resolution Program*, at 2. Ms. Cole asserts that, as of July 24, 2009, the NAF no longer accepts consumer arbitrations and, therefore, the agreement is unenforceable.[10] However, Ms. Cole clearly could have been raised that argument in the first action, but she did not. Therefore, it is too late for her to raise the issue now.[11] Likewise, the Court finds Ms. Cole is precluded from relitigating her

---

[9]In this action, Ms. Cole has not made any specific arguments with regard to the agreement she signed being unconscionable under common law principles. To the extent she would make such argument, it would be barred by res judicata because it could have been raised in the first federal action. The Supreme Court's remand in *Brown* for a determination of whether state common law principles is not a new concept that arguable could fall within the exception to res judicata. *See Perry v. Thomas*, 482 U.S. 483, 489 (1987) (quoting 9 U.S.C. § 2, in part) (providing that, unless an "agreement to arbitrate is not part of a contract evidencing interstate commerce or is revocable 'upon such grounds as exist at law or in equity for the revocation of any contract[,]'" it shall be enforced); *American Gen. Life and Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005) (stating that "ordinary state-law principles resolve issues regarding the formation of contracts . . . and 'generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening [9 U.S.C.] § 2'" (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)); *Blankenship v. Seventeenth Street Assocs., LLC*, No. 3:11-067, *Order* (entered on Feb. 1, 2012) (granting the plaintiff's request to conduct limited discovery on the formation and execution of the alleged arbitration agreement).

[10]*See In re Nat'l Arbitration Forum Trade Practices Litig.*, 704 F. Supp.2d 832, 835 (D. Minn. 2010) (recounting consent decree by NAF which forbids it to perform consumer arbitrations).

[11]Moreover, the Court finds Ms. Cole overtly omits the remainder of statement which provides the "DRP must be settled by the rules and procedures of . . . ("NAF"*) or the Judicial*
(continued...)

-13-

claim that she did not have authority to bind her mother to the agreement, as the Court resolved the issue in the first case and will not revisit it here.

Finally, Seventeenth Street Associates argues, like its counterparts did in the first federal action, that this Court should enjoin the state court from acting or, in the alternative, enjoin Ms. Cole from prosecuting her state action. For the reasons set forth in the first case, however, this Court declines to do so. As this Court stated in the first case, it fully expects Ms. Cole will refrain from pursing those claims which are subject to the motion to compel.

---

[11](...continued)
*Arbitration and Mediation Service ("JAMS")*. *Id*. (italics added). The end of that paragraph also provides "[t]he parties may agree to use a local arbitrator(s) in accordance with the process described above using the JAMS' rules and procedures or such other rules and procedures as the parties may agree to use." *Id.* In addition, there is a savings clause which states:

> This Agreement is intended to be performed in accordance with all applicable laws, ordinances[,] rules and regulations. If any term or phrase or provision of this Agreement is held to be invalid, unenforceable, or contrary to public policy, it will not invalidate the remainder of this Agreement. Instead, this Agreement will be determined to be amended to conform with applicable federal or state laws, ordinances, rules, or regulations and will otherwise remain in full force and effect.

*Id*. at 4. Ms. Cole made no argument with respect to the unavailability of NAF or JAMS, *see* JAMS "Consumer Arbitration Policy: Minimum Standards of Procedural Fairness" (effective July 15, 2009), in the first federal action or the impact the savings clause has on the enforcement of the agreement. It is simply too late to do so now.

## III.
## CONCLUSION

Accordingly, for the foregoing reasons, the Court **GRANTS** the Motion to Compel Arbitration and **DENIES** the Motion to Stay the State-Court Proceedings. [ECF No. 2]. Having resolved all the issues before this Court, the Court **ORDERS** this case be dismissed from the docket.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

       ENTER:  February 29, 2012

       _____
       ROBERT C. CHAMBERS
       UNITED STATES DISTRICT JUDGE